FILED

2010 Aug-25  PM 12:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES E. McWILLIAMS,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:04-CV-2923-RDP-RRA** |
| | } | |
| **DONAL CAMPBELL,** | } | |
| **COMMISSIONER OF THE** | } | |
| **ALABAMA DEPARTMENT OF** | } | |
| **CORRECTIONS, et al.,** | } | |
| | } | |
| **Respondents.** | } | |

## MEMORANDUM OPINION

This case involves a petition for a writ of habeas corpus on behalf of James McWilliams ("McWilliams" or "Petitioner") who has been convicted of capital murder and sentenced to death.   The state trial court made specific findings concerning the circumstances of McWilliams' participation in the brutal murder, and those findings were adopted by the Alabama Court of Criminal Appeals:

> The defendant, James Edmund McWilliams, Jr., raped, robbed, and murdered Patricia Vallery Reynolds. The crime occurred on December 30, 1984 at Austin's Food Store, Hargrove Road, Tuscaloosa, Alabama.
>
> Patricia Vallery Reynolds was a clerk at Austin's, a convenience store. The defendant went into the store, locked the front doors, robbed Mrs. Reynolds by taking money from her possession, took her to the back room and brutally raped her, then shot her with a .38 caliber pistol. There were 16 gunshot wounds (8 entrance, 8 exit). She was initially shot while standing, and also shot while lying on the floor. She was shot

6 times, with 2 of the bullets first penetrating her hand or arm before entering and exiting her body. The bullets penetrated both lungs, both hemidiaphragms, the liver, pancreas, stomach, spleen, upper forearms, and hand.

Mrs. Reynolds died in surgery at 12:40 a.m. The cause of death was exsanguination.

The defendant was identified by eyewitnesses who placed him at the scene.

The defendant was apprehended in Findlay, Ohio, driving a stolen car. The murder weapon (also stolen) was in his possession. He was jailed in Ohio, charged with auto theft, possession of stolen property, carrying a concealed weapon, and no operator's license. In the Ohio jail, he bragged to other inmates that he had robbed, raped, and killed a woman in Alabama.

*McWilliams v. State*, 640 So. 2d 982, 986-87 (Ala. Crim App. 1991), *aff'd in part and remanded in part*, 640 So. 2d 1015 (Ala. 1993), *on remand*, 640 So. 2d 1025 (Ala. Crim. App. 1994), *opinion after remand*, 666 So. 2d 89 (Ala. Crim. App. 1994), *aff'd*, 666 So. 2d 90 (Ala. 1995), *cert. denied*, 516 U.S. 1053 (1996).

On February 1, 2008, the Magistrate Judge entered a Report and Recommendation recommending that the petition for a writ of habeas corpus and Petitioner's requests for an evidentiary hearing be denied. (Doc. 55). Petitioner timely filed objections to the Report and Recommendation on February 25, 2008. (Doc. 57). In the document, Petitioner objected to the Magistrate Judge's recommendations as to Claims I, II, III, IV, XX, XXIII, and XXV(a).

On April 14, 2008, Petitioner requested and was granted permission to file additional objections to the Magistrate Judge's recommendation pertaining to Claim XXIII. (Doc. 59). On November 14, 2008, Petitioner again requested and was granted permission to file supplemental objections to the Report and Recommendation. (Docs. 61 and 63). In these documents, McWilliams made objections pertaining to Claims XXV(a) and XXV(b).[1]

Upon fervent request of Petitioner's counsel, on June 23, 2009, this court once again allowed Petitioner to file as exhibits two self-styled "Notice[s] of Supplemental Law," that previously had been stricken by the court. (*See* Exhibits A and B to Doc. 67). The content of these "Notices" pertains to Claim XXV(a) (*Brady/Giglio*) and XXV(b) (ineffective assistance of counsel) as well as Claim XXVIII (ineffective assistance of post-conviction counsel). (*Id.*). On the same day, Petitioner filed yet another Motion for Leave to file a Notice of Supplemental Law, which the court granted. (Doc. 68). In this "Notice," McWilliams makes further arguments concerning the substantive aspects of Claim III (*Batson*) and Claim XXV(a) (*Brady/Giglio*).

---

[1] Petitioner is clearly objecting to the Magistrate Judge's recommendation that he "is barred from raising his timely filed *Brady* issues." (Doc. 63, pp. 1-6). He then adds, without explanation, that the *Brady* issues (Claim XXV) "also deal with Issues VIII, XXIII, XXV.I." *Id.* at 4.

3

In addition to each of the foregoing objections, supplements and notices for which he requested permission and was (generously) granted leave to file, Petitioner has filed numerous other out-of-time objections and notices without requesting leave of court to do so.   (Docs. 58, 69, 72, 74).

As a matter of organization, inasmuch as Petitioner's first objections (filed on February 25, 2008) to the Magistrate Judge's Report and Recommendation are the most comprehensive (at least in terms of the number of claims addressed), the Memorandum Opinion will follow the same general organization as those objections. (*See* Doc. 57).  Where pertinent, the additional allowed objections and notices (Docs. 59, 61, 63, 67, and 68) will be referenced and considered.

**Claim I.    The State's Adverse Comment on James McWilliams' Choice Not to Testify Denied Him His Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.   (Doc. 57, pp. 2-3 ("Objections")).**

McWilliams challenges the following comment:

You know, one thing I do note that neither of the defense attorneys have talked about in the evidence or really dwelt on: they did not talk about that gun in that car right beside the man underneath the armrest, loaded, up in Ohio.  And they did not talk about the bullets in his pocket; and they did not talk about the bullets down in the floorboard of the car-the ones he said he was biting on.  He said he knew those were there, but he didn't know about the gun being there.  Why did he have bullets in his pocket if he didn't know anything about any of this?  There is no good reason, explanation, that indicates anything other than guilt in this case.

There is no other explanation for it, and you have not heard an explanation; the evidence doesn't show any other explanation for it.

*Ex parte McWilliams*, 640 So. 2d 1015, 1018 (Ala. 1993).  The Alabama Supreme Court held that these statements were "clearly a comment on the failure of defense counsel to explain testimony or evidence."  *Id*. at 1020.

The Magistrate Judge concluded that the prosecutor's argument was not an improper comment on McWilliams' right to remain silent under *Isaacs v. Head*, 300 F.3d 1231 (11th Cir. 2002), and that the defendant had not shown that the state court's decision was contrary to or involved an unreasonable interpretation of the law or that it was based on an unreasonable determination of the facts in light of the evidence presented in state court.

In his objections, McWilliams reiterates his assertion that only he could have explained why he had bullets in his pocket if he did not know the gun was in his car. Therefore, he contends, the comments at issue could have been referring only to the fact that he did not testify.  This objection lacks merit.  The comment was clearly directed to the failure of the defense attorneys, not the defendant, to address the evidence of the loaded gun beside McWilliams in the car, the bullets in McWilliams' pocket, the bullets on the floorboard, and the bullets McWilliams was biting.  When McWilliams was stopped in Ohio, he said he had been chewing on the bullets but

claimed that his uncle had been in the vehicle earlier and had had the gun with him.
The prosecutor's comment pointed out the failure of defense counsel to offer any explanation for the inconsistencies within the statements made by the defendant. There is no evidence that the prosecutor's comment was manifestly intended to comment on McWilliams' right to silence, and McWilliams cannot show that the jury would naturally and necessarily have interpreted the comment as such.

**Claim II.    The Presumption of Innocence and the Reliability of the Sentencing Trial Were Undermined When a Guard Provoked an Argument with James McWilliams in Front of Several Jurors, While James Was Wearing Handcuffs.  (Doc. 57, pp. 3-10).**

The Alabama Court of Criminal Appeals described the incident to which McWilliams refers as follows:

> The record indicates that, after the proceedings had ended on one day of the trial and the jury had been escorted out of the courtroom, a confrontation arose between the defendant and a guard who was to escort the defendant back to his cell.  The confrontation apparently began in the courtroom and continued into the hall of the courthouse. The appellant was handcuffed by the guard while in they were in [sic] the courtroom and he was then led out into the hall, where words were apparently exchanged-possibly concerning the appellant's guilt or innocence.  On the following morning, the jurors were individually questioned as to what they heard or saw concerning the incident, and whether anything they might have seen or heard would prejudice them against the appellant or the State in any way.  Each juror who indicated any sort of awareness of the matter testified that he or she would not be prejudiced against the appellant or the State.

*McWilliams v. State of Ala.*, 640 So. 2d 982, 995 (Ala. Crim. App. 1991). The Alabama Court of Criminal Appeals found that McWilliams suffered no prejudice as a result of this incident. The Magistrate Judge's Report concludes that, in light of the record, it was not unreasonable for the criminal appeals court to conclude that the incident did not undermine McWilliams' presumption of innocence or the reliability of the sentencing. McWilliams has not offered clear and convincing evidence to rebut the presumption of correctness this court is required to accord the state court's findings, and he has not demonstrated that the state appellate court's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable interpretation of the facts in light of the evidence before that court.

In his objections, McWilliams argues again that he is automatically entitled to a new trial pursuant to *Deck v. Missouri*, 544 U.S. 622 (2005). In *Deck*, the Court held "that the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest' — such as the interest in courtroom security — specific to the defendant on trial." *Id.* at 624. However, the defendant in *Deck* was "shackled with leg irons, handcuffs, and a belly chain," in full view of the jury, during the entire penalty phase of his trial, over the objection of his counsel. *Id.*

McWilliams claims that *Deck* shows there were numerous problems with the state court's holding on this issue.  First, he claims that the shackling of a defendant in a criminal trial is "inherently prejudicial" and a violation of due process, unless it is necessary to achieve an essential state interest policy or maintaining security in the courtroom.  *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986).  He claims that the prosecution did not make such a showing in his case.  However, there is no indication that McWilliams was ever handcuffed during the trial.  Further, this incident happened when McWilliams was being removed from the courtroom and there is no evidence that any juror actually saw McWilliams in handcuffs.  There simply is no merit to this objection.

**Claim III.   James McWilliams' Rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Were Violated by the State's Racially Discriminatory Exercise of Peremptory Strikes. (Doc. 57, pp. 10-13) and (Doc. 68, pp. 1-5).**

McWilliams claims that his rights were violated when the state used nine of its seventeen peremptory strikes to exclude qualified black members of the jury venire. The Alabama Supreme Court found that McWilliams had not established a *prima facie* case of a *Batson* violation.  *McWilliams*, 640 So. 2d at 1018.  The Magistrate Judge found that the state court properly applied *Batson* to McWilliams' claim and that the denial of the claim was not contrary to, nor did it involve an unreasonable

application of clearly established law, and that McWilliams had not established that the decision was based on an unreasonable interpretation of the facts in light of the evidence presented.   The Magistrate Judge further found, in any event, that allegations in support of his *Batson* claim that were not raised in the state court were procedurally barred.

McWilliams argues in his objections and supplement[2] that he did in fact present these allegations in the Alabama Supreme Court.  However, to the extent they were presented in state court, that court found that they were conclusory and did not consider them.  When a party attempts to present a claim to a federal court, but that claim was presented in such a conclusory form that the state court could not address its merits, the federal court may not address that claim.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1996); *Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991). Therefore, as explained below, these conclusory claims have been procedurally defaulted.

McWilliams conceded in his habeas petition that, other than the pattern and number of black venire members peremptorily struck by the prosecution in his case, almost all other allegations pertaining to the first prong of the *Batson* test were

---

[2] In his supplement (Doc. 68, pp. 1-5), McWilliams cites *McGahee v. Alabama Department of Corrections*, 560 F.3d 1252 (11th Cir. 2009).  However, the factual issues underlying *McGahee* (and, for the most part, the particular *Batson* issues examined therein) bear virtually no resemblance to anything in McWilliams' case.

conclusory.  (Doc. 1, pp. 58-59).  Thus, the Magistrate Judge's and the state court's conclusions regarding this aspect of McWilliams' claim are correct.  *See Trawick v. Allen*, 520 F.3d 1264, 1269 (11th Cir. 2008) (finding that the Alabama Supreme Court did not err when it found that Petitioner's "reliance on the number and pattern of strikes against women was, without more, insufficient to establish a *prima facie* case of gender discrimination in this case.").[3]

In any event, the only other allegation McWilliams excepts from this admission (*i.e.*, that the bulk of this claim was conclusory) was his assertion that the Tuscaloosa County District Attorney's office had a history of discriminating against black venire persons, and this included a capital case that had been tried just six months after his conviction.  (Doc. 1, p. 59).  He further alleges that the historical discrimination argument was made in a reply brief before the Alabama Supreme Court, when appellate counsel wrote:

> In addition, the Tuscaloosa County District Attorney's Office has a history of racial discrimination in jury selection.  See, *Ex parte Branch*, supra at 623.  *Hemphill v. State*, ___ So.2d ___ [No. 6 Div. 261] (Ala.Cr.App. 7/24/1992) (in case tried less than six months after Mr. McWilliams' trial, Tuscaloosa County District Attorney's office violated *Batson*).  See also, *Jackson v. Thigpen*, __ F.Supp.__ [No. 87-C-2046-W] [NDAla 11/30/90 (prior to 1982, Tuscaloosa County District

---

[3] Moreover, many of his allegations are procedurally defaulted because he did not raise them until he filed his application for rehearing before the Alabama Supreme Court (which was denied).

Attorneys' office found in violation of *Swain v. Alabama*, which required a higher of proof than *Batson*).

*Id.* at 59-60[4] (no citation to record by Petitioner).

It was this allegation that the Magistrate Judge initially found to be procedurally defaulted on the ground that McWilliams had not raised it at all before the Alabama Supreme Court. (*See* Doc. 55, pp. 34-36). As noted above, however, in fact, the record shows that appellate counsel first raised *Batson* allegations in a *reply brief* before the Alabama Supreme Court, and even then the allegations were buried within other allegations that Petitioner already has conceded were conclusory. (*See* R. Vol. 42, Tab. 83, pp. 3-4). It is a well "settled rule that [the Alabama Supreme] Court does not address issues raised for the first time in a reply brief." *Byrd v. Lamar* 846 So. 2d 334, 341 (Ala. 2002) (citing *Perkins v. Dean*, 570 So. 2d

---

[4] Although McWilliams cites to *Hemphill v. State*, 610 So. 2d 413 (Ala. Crim. App. 1992) (on remand) that case is easily distinguishable. In *Hemphill*, the Alabama Court of Criminal Appeals remanded for a *Batson* hearing because trial counsel objected to the prosecutor's striking of 7 out of 11 blacks, the State (at trial and on appeal) chose to defend its strikes, and the court was unable to determine if the reasons articulated by the State were sufficient to overcome the defendant's *Batson* challenge. *Hemphill v. State*, 571 So. 2d 365, 367 (Ala. Crim. App. 1990). Thus, the question that initiated the remand in *Hemphill*, unlike McWilliams' case, was not whether the petitioner had indeed established a *prima facie* case of discrimination.

Petitioner also cites to *Jackson v. Thigpen*, 42 F.3d 1350, 1356, 1358 (11th Cir. 1985), but that case is of no help to McWilliams either. In *Jackson*, the evidence showed that the Tuscaloosa County District Attorney's office engaged in systematic discrimination of blacks in the early 1980's by striking all or as many blacks as they could in criminal jury trials involving violent crimes. However, this practice ended in 1985, which was *before* McWilliams' case was tried. Moreover, the *Batson* issue in *Jackson* was procedurally defaulted, and relief was granted to the petitioner on the basis of ineffective assistance of counsel for failure to raise a *Batson* claim.

One final point is worth noting. McWilliams' case decisions were rendered on direct appeal by the Alabama Court of Criminal Appeals in 1991 and by the Alabama Supreme Court in 1993. Prior to those decisions, the Alabama courts had already remanded in cases like *Hemphill* when it was determined a *Batson* claim was not properly addressed in the trial court. This point actually strengthens the Alabama Supreme Court's determination that, in McWilliams' case, the Alabama courts properly viewed his allegations as conclusory and that he failed to establish a *prima facie* case of a *Batson* violation.

1217, 1220 (Ala. 1990); *Kennesaw Life & Accident Ins. Co. v. Old Nat'l Ins. Co.*, 291 Ala. 752, 287 So. 2d 869, 871 (1973)) (brackets added). McWilliams' failure to make any assertion about juror panelist discrimination in the Tuscaloosa County District Attorney's office until filing his reply brief operates as a waiver of the allegations pursuant to adequate and independent state procedural rules. Such a default precludes federal review of the allegations, and as such, to the extent McWilliams failed to properly raise Tuscaloosa County's historical discrimination in support of his *prima facie Batson* claim before the Alabama Supreme Court, it is procedurally defaulted in this court. Furthermore, and in any event, even if his *Batson* allegations were not procedurally defaulted, McWilliams did not fairly present the allegation in his reply brief. Such a failure also precludes federal review of the claim.

**Claim IV.    The Prosecutor Used Inadmissible Hearsay Testimony about Harry Porter's Alibi to Disprove the Defense Theory That James McWilliams Was Mistakenly Identified as the Killer. (Doc. 57, pp. 32-35).**

Although McWilliams raised this claim on direct appeal in the Alabama Court of Criminal Appeals, he did not include it in his petition for a writ of *certiorari*. Therefore, the Magistrate Judge recommended that it be dismissed as procedurally barred under *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-47 (1999).

In his objections, McWilliams argues that, because the Alabama Supreme Court made the following statement in its opinion, it must be assumed that the court reviewed this claim and found it to be without merit:

> In his petition to this Court, McWilliams presents 26 issues for review. He presented all but six of these issues to the Court of Criminal Appeals.  That court issued a detailed and lengthy opinion, which provided a thorough treatment of each of the issues raised by McWilliams.  We have thoroughly reviewed the record before us for error regarding the issues raised, as well as for plain error not raised. FN.1.
>
> > FN. 1.  Our review of a death penalty case allows us to address any plain error or defect found in the proceeding under review.  This is so even if the error was not brought to the attention of the trial court.  Rule 45, A. R. App. P.

*McWilliams*, 640 So. 2d at 1016.  McWilliams claims that the Alabama Supreme Court identified the constitutional claim and decided the claim on the merits.  That assertion is incorrect.  The Alabama Supreme Court never mentioned this claim at all.

McWilliams cites *Julius v. Johnson*, 840 F.2d 1533, 1546 (11th Cir. 1988) in support of his argument that because the Alabama Supreme Court reviewed the record for "plain error not raised," the court implicitly found that this claim was without merit.  However, as the Eleventh Circuit stated in *Julius*, "[a]doption of this position would preclude a finding of procedural default in virtually every Alabama capital case."  *Id.*  The court went on to find as follows:

Since Magwood was silent about the non-effect of Alabama's plain error rule on procedural default issues, we will be explicit: the mere existence of a "plain error" rule does not preclude a finding of procedural default; moreover, the assertion by an Alabama court that it did not find any errors upon its independent review of the record does not constitute a ruling on the merits of claims not raised in that court or in any court below.  FN10.  Unless there is some indication that the state court was aware of this issue, we cannot say that the court rejected the merits of Petitioner's constitutional claim.   A contrary rule would encourage the "sandbagging" of state courts criticized in *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).   *See Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 2647, 91 L. Ed. 2d 397 (1986) (possibility of "sandbagging" exists on appeal "since appellate counsel might well conclude that the best strategy is to select a few promising claims for airing on appeal, while reserving others for federal habeas review should the appeal be unsuccessful.").  Accordingly, we reject [this] argument.

> FN10. This rule is limited to the facts of this case.  We express no opinion as to the effect of such a statement when the allegedly barred issue was raised by the defendant but not discussed in the state court's opinion.  Nor need we decide whether such language permits federal review where the defendant raised the claim at trial, thus making it more likely that the state appellate court came across the claim during its review of the record.

840 F.2d at 1546.  Thus, the Eleventh Circuit in *Julius* clearly stated that the rule it set out applied only to the peculiar facts of that case.  And certainly no rule was established for a case like this one where McWilliams raised the claim in the Court of Appeals but failed to raise it in the Supreme Court.  The point is as tautological as it is true:  if the Alabama Supreme Court had intended to address the merits of this

claim, it certainly would have done so.  This court cannot assume that the Alabama Supreme Court decided the merits of the claim against McWilliams, as such an assumption would virtually render the procedural default law meaningless in capital cases.

Finally, the Magistrate Judge found that even if the claim had not been defaulted, the claim is due to be denied because McWilliams failed to show the Alabama Court of Criminal Appeals' decision on the merits of the claim was contrary to, or involved an unreasonable application of clearly established law, or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  McWilliams has not objected to this portion of the recommendation.

**Claim XX.   Due Process Required a Jury Instruction about the Lesser Included Offense of Felony Murder Because a Rational Jury Could Have Found That the Robbery Was Committed by Two Men and James McWilliams Was Not the Triggerman or an Accomplice to the Murder.  (Doc. 57, p. 35).**

McWilliams claims that he was denied due process of law when the trial court refused to instruct the jury to consider the lesser included offense of felony murder. The Alabama Court of Criminal Appeals denied this claim on the merits, finding that there was "no reasonable theory from the evidence which would have supported such a charge." *McWilliams*, 640 So. 2d at 1003.  The Magistrate Judge recommended that

15

the claim be denied because McWilliams failed to show the state court's decision was contrary to, or involved an unreasonable application of clearly established law, or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

McWilliams' objection to the Recommendation regarding this claim centers on his assertion that "[a]s with Issue VIII, the *Brady* and *Giglio* claims, raised as a separate claim, in Claim XXV(a) support this claim." But as Petitioner's objections to the Recommendation on Claim XXV(a) are without merit, they are of no help to McWilliams on this claim.

**Claim XXIII.**    **The Identification of James McWilliams by Howard Marsh, Ronnie Thomas and Steven McDaniel Should Have Been Suppressed Because James Was Denied His Right to Have Retained Counsel Present When These Witnesses Identified Him in a Lineup.  (Doc. 57, pp. 35-36) and (Doc. 59).**

McWilliams next claims that his rights were violated by his identification in a pre-indictment line-up in which he was not allowed to have retained counsel present, even though at that time he was represented by appointed counsel.  The Magistrate Judge recommended that this claim be dismissed because, as the Alabama Court of Criminal Appeals correctly noted, pursuant to *Kirby v. Illinois*, 406 U.S. 682 (1972), there is no constitutional right to have counsel present at a pre-indictment lineup.  The Magistrate Judge found that the Alabama Court of Criminal Appeals'

decision was not contrary to clearly established law, did not involve an unreasonable application of clearly established law, and was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

McWilliams objects to that finding, citing *Floyd v. State*, 412 So. 2d 826, 828 (Ala. Crim. App. 1981) and *Sparks v. State*, 376 So. 2d 834, 841 (Ala. Crim. App. 1970), for the proposition that:

> An accused is not entitled to have counsel provided for him at a pre-indictment lineup. *Hatchet v. State*, Ala.Cr.App., 335 So.2d 415 (1976). However, he does have the right to have his own employed counsel present upon request. *Sparks v. State*, Ala.Cr.App., 376 So.2d 834 (1979).

*Floyd,* 412 So. 2d at 828. However, in its opinion, the Alabama Court of Criminal Appeals cited several more recent Alabama cases[5] which held that defendants do not have a right to counsel during a pre-indictment lineup.

This claim clearly involves nothing more – and nothing less – than a state court's determination of its own law. Generally, a state court's "construction of state law is binding on federal courts entertaining petitions for habeas relief." *Beverly v.*

---

[5] *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972); *Franklin v. State*, 424 So. 2d 1353 (Ala. Crim. App. 1982), *cert. denied*, 424 So. 2d 1353 (Ala. 1983); *Tankersley v. State*, 448 So. 2d 486 (Ala. Crim. App. 1984); *Fisher v. State*, 439 So. 2d 176 (Ala. Crim. App.), *cert. denied*, 439 So. 2d 176 (Ala. 1983); *Johnson v. State*, 526 So. 2d 34, 38 (Ala. Crim. App. 1987); and *Hollingquest v. State*, 552 So. 2d 1078 (Ala. Crim. App. 1989). *McWilliams*, 640 So. 2d at 1012-13.

*Jones*, 854 F.2d 412, 416 (11th Cir. 1988) (*quoting Tyree v. White*, 796 F.2d 390,

392-93 (11th Cir. 1986)).  "A federal habeas corpus court may not interfere with a

state court's interpretation of state law absent a constitutional violation." *McCoy v.*

*Newsome*, 953 F.3d 1252, 1264 (11th Cir. 1992).

> Questions of state law rarely raise issues of federal constitutional
> significance, because "[a] state's interpretation of its own laws provides
> no basis for federal habeas corpus relief, since no question of a
> constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d
> 1053, 1053-54 (11th Cir. 1983)(citations omitted). We review questions
> of state law in federal habeas proceedings only to determine whether the
> alleged errors were so critical or important to the outcome to render "the
> entire trial fundamentally unfair." *Id*. at 1054 (defective jury charge
> raises issue of constitutional dimension "only if it renders the entire trial
> fundamentally unfair"); *see also Futch v. Dugger*, 874 F.2d at 1487
> (improperly admitted evidence "must be inflammatory or gruesome, and
> so critical that its introduction denied petitioner a fundamentally fair
> trial").  "[T]he established standard of fundamental unfairness [when
> reviewing state evidentiary rulings] is that habeas relief will be granted
> only if the state trial error was 'material in the sense of a crucial, critical,
> highly significant factor.'" *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.
> 1983)(quoting *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976).

*Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991).  Thus, this court is bound

by the Alabama Court of Criminal Appeals' determination that McWilliams did not

have a right to have counsel present at the line-up.  McWilliams has not cited any

authority from the United States Supreme Court or the Eleventh Circuit Court of

Appeals indicating that his constitutional rights have been violated. This objection has no merit.[6]

**Claim XXV(a).**   **The State Blatantly Violated *Brady* and *Giglio* and Often Used These Violations to Mislead the Jury.  (Doc. 57, pp. 36-63), (Docs. 61, 63, 67, 68 pp. 5-7).**

McWilliams made numerous allegations of *Brady* and *Giglio* violations in this claim.  The only parts of this claim that were successfully raised appeared in his amended Rule 32 petition filed September 29, 1999.  The Rule 32 court, the last state court to address the merits of the claim, found that there was no *Brady* violation.  The Magistrate Judge recommended that the claim be denied because McWilliams did not show that the decision was contrary to, or an unreasonable application of law, or that the decision was based on an unreasonable determination of the facts in light of the evidence before the court.  McWilliams does not appear to object to this portion of the Recommendation.  Regardless, a review of the Rule 32 court's order shows no basis upon which to grant McWilliams habeas relief.

---

[6] In his "Motion to Leave to File the Following Objections to the Magistrate's Report and Recommendation," filed April 24, 2008, Petitioner objects to footnote 24 of the Report and Recommendation, in which the magistrate judge noted the following: "[h]owever, the court notes that according to McWilliams, '[a] lawyer named Boller appeared at the lineup and said the he was representing' him.  Petition at 141."  (Doc. 59, p. 1).  Petitioner characterizes this statement as an alternative holding.  However, a reading of the recommendation reveals that it was nothing more than a statement referencing a comment by Petitioner.  The magistrate judge clearly stated that he was recommending that the claim be denied because the Alabama Court of Criminal Appeals had correctly noted that pursuant to *Kirby v. Illinois*, 406 U.S. 682 (1972), there is no constitutional right to have counsel present at a pre-indictment lineup, and that this decision was neither contrary to, nor involved an unreasonable application of clearly established law, nor was it based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

McWilliams also raised numerous other *Brady* and *Giglio* claims that the Alabama Court of Criminal Appeals held were procedurally barred because they had not been raised before the trial court:

> [McWilliams] argues that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  However, he raised only one of the claims he presents in his brief - i.e., that there was evidence that two inmates who testified against him had a motive to lie, that their testimony was contradicted by evidence at the scene, and that the witnesses lied about receiving favorable treatment-before the circuit court.  FN.
>
> > FN.  Because he did not first present the remaining *Brady* claims to the circuit court, they are not properly before this court.  *See Morrison v. State*, 551 So.2d 435 (Ala. Crim. App. 1989).

*McWilliams*, 897 So. 2d at 451.  The Magistrate Judge recommended that the additional claims be denied because they were procedurally defaulted in state court.

McWilliams asserts in his objections, notices, and supplements that he should have been allowed to amend his Rule 32 petition after the evidentiary hearing was held in order to add these new claims (regardless of the fact that the court had issued an agreed upon pre-trial order in which he agreed not to amend his pleadings or put on new evidence).  That argument is off the mark.  The Alabama Court of Criminal Appeals reasonably found that the trial court had not abused its discretion when it refused McWilliams' repeated attempts to amend his petition long after the scheduled

20

time period for doing so had expired, and long after an evidentiary hearing had been held. *See McWilliams v. State*, 897 So. 2d 437, 448-449 (Ala. Crim. App. 2004).

McWilliams also argues that the Alabama Supreme Court subsequently overruled the procedural holding that barred McWilliams from amending his Rule 32 petition in *Ex parte Jenkins*, 972 So. 2d 159 (Ala. 2005), and its progeny. That is not the case. In *Jenkins*, the Alabama Supreme Court overruled *McWilliams*, 897 So. 2d 437 (Ala. Crim. App. 2004), to the extent that the court "applied the relation-back doctrine to proceedings governed by Rule 32, Ala. R. Crim. P." *Jenkins*, 972 So. 2d at 165. However, the *Jenkins* decision does not help McWilliams in this instance. The Alabama Court of Criminal Appeals held that these claims were defaulted because McWilliams "did not first present the remaining *Brady* claims to the circuit court." *McWilliams*, 897 So. 2d at 451. Thus, there simply was no finding that the claims were defaulted because they did not relate back to the original petition.

McWilliams also asserts that these claims are not defaulted pursuant to the holding in *Ex parte Clemons*, No. 1041915, 2007 WL 1300722 (Ala. May 4, 2007), and its progeny. He states that in *Clemons* the "Alabama Supreme Court subsequently overruled the procedural holdings that the claims in his *second* amended

petition were barred by the statute of limitations."[7]   (Doc. 57, p. 62) (emphasis added).   However, McWilliams ignores the fact that the appellate court found no abuse of discretion in the trial court's denial of his untimely motions to amend the petition (including the second amended petition), which in turn supported its conclusion that the claims were defaulted because McWilliams "did not first present the remaining *Brady* claims to the circuit court."   *McWilliams*, 897 So. 2d at 451. There was no finding that the claims in the second amended petition were defaulted because they were barred by the statute of limitations.   Therefore, the holding in *Clemons* has no effect here.

### Claim XXV(b).   James McWilliams' Attorneys Provided Ineffective Assistance of Counsel During His Trial.   (Docs. 61, 63, 67).

As a part of this claim, Petitioner alleged that the Alabama appellate courts applied the wrong standard of review in denying his ineffective assistance of counsel claims.   The Magistrate Judge found that:

> even assuming he is correct, this claim standing alone, does not warrant habeas relief.   Only if McWilliams shows that the wrong standard of review was used in conjunction with one of his substantive ineffective assistance of counsel claims can he obtain any relief.   As discussed below, McWilliams' sentencing phase claims were properly decided by

---

[7]   In *Clemons*, the court did not specifically overrule *McWilliams* as Petitioner would have this court believe. Further, to the extent it could be argued that the appellate court applied the Clemons' ruling to McWilliams' *Brady* claim as set out in the first amended petition, this court already has determined that the Rule 32 court's decisions regarding the *Brady* claims in the first amended petition control this court's review.

the state appellate court, and the guilt phase claims are procedurally defaulted.  Therefore, this claim is due to be denied.

(Doc. 55, p. 156 n. 28).

Petitioner now contends that the majority and minority holdings in *Danforth v. Minnesota*, 128 S. Ct. 1029, 1054 (2008), support his argument that the Alabama appellate courts are using the wrong standard of review to interpret federal law for ineffective assistance of counsel claims.  However, as the Magistrate Judge stated in the Report and Recommendation, even assuming that the wrong standard was used by Alabama courts, this claim alone does not warrant habeas relief.  (Doc. 55, p. 156 n. 28).  Thus, this objection has no merit.

## Claim XXVII.   James McWilliams' Post-Conviction Attorneys were Ineffective.   (Exhibit A to Doc. 67).

The Magistrate Judge properly found that Petitioner had failed to state a claim for which habeas relief could be granted because "Title 28 U.S.C. § 2254(I) provides that '[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.'" (Doc. 55, p. 180).

This court allowed McWilliams to file Exhibit A because Petitioner's counsel asserted that he understood the document had been filed in August 2007, but had discovered that it in fact had not been filed.  In that filing, Petitioner concedes that the

Eleventh Circuit confirmed in *Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006), that "there is no constitutional right to appointed counsel" post-conviction. (Doc. 67, p. 6). He nevertheless argues that *Barbour* did not address the type of facts that are particular to his case, and that unlike the defendant in *Barbour*, he can establish prejudice. (*Id*.)

McWilliams' assertion is without merit. As there is no constitutional or statutory right to post-conviction counsel, the facts underlying his particular allegations make little difference in the final equation. He cannot state a claim upon which relief can be granted.

## CONCLUSION

The court overrules all of Petitioner's objections and hereby adopts and approves the findings and conclusions of the Magistrate Judge as the findings and conclusions of the court. Accordingly, this habeas petition is due to be dismissed. An appropriate order will be entered.

**DONE** and **ORDERED** this _____25th_____ day of August, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE